**Thomas ALEXANDER, Jr.**

v.

**Kathy FERGUSON.**

**David William FERGUSON**

v.

**Kathy FERGUSON.**

**Civ. Nos. JFM–86–803, JFM–86–1727.**

United States District Court, D. Maryland.

Oct. 17, 1986.

Thomas Alexander, pro se.

George Goldsborough, Easton, Md., for David William Ferguson.

Linda Christopher, Upper Nyack, N.Y., for Kathy Ferguson.

## MEMORANDUM

MOTZ, District Judge.

■ These consolidated actions are brought against Kathy Bollatti under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. Section 1738A. One of the actions is brought by David Ferguson, Bol-

latti's former husband and the father of two children born of their marriage. The other action is brought by Thomas Alexander, Jr., who has been appointed as the guardian of the person of the two children by the Circuit Court for Cecil County, Maryland. Plaintiffs seek a declaratory judgment that the Circuit Court for Cecil County rather than the Family Court of the State of New York, County of Rockland, has jurisdiction to make determinations as to the custody of the two children. Plaintiffs also seek an injunction enjoining all further state court proceedings relating to the children's custody.[1]

I.

A threshold question exists as to whether this Court has subject matter jurisdiction over this action or, alternatively, whether the complaints state a claim upon which relief can be granted. Federal question jurisdiction does exist under 28 U.S.C. Section 1331. Likewise, under the law of this Circuit a claim upon which relief can be granted has been stated. In *Hickey v. Baxter*, 800 F.2d 430 (4th Cir.), the Fourth Circuit, albeit without substantial analysis, followed the three other circuits which have found that Congress did intend to create a right of action maintainable in the federal courts under Section 1738A. *See McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986); *Hertfield v. Hertfield*, 749 F.2d 1138 (5th Cir.1985); *Flood v. Braaten*, 727 F.2d 303 (3rd Cir.1984). The Ninth Circuit has recently reached the contrary conclusion. *See Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986). This Court is inclined to agree with the Ninth Circuit's view that the statutory language, the Congressional findings and the legislative history indicate that in enacting the PKPA Congress intended to establish national standards *for the state courts to follow* in determining jurisdiction in custody cases—not to provide a federal forum for litigation

of jurisdictional issues. However, *Hickey* is controlling here.

II.

Plaintiff and defendant (sometimes referred to as "Husband" and "Wife") were both raised on Maryland's Eastern Shore. Their families continue to reside there. They were married in 1975, and in 1978 they moved to Pennsylvania. In 1980 their first child, a son, was born. In September 1982 Wife filed for a divorce in Pennsylvania. She was granted temporary custody of the child and a permanent protective order was entered. In February 1983 the Pennsylvania court granted joint legal custody of their son to Wife and Husband and physical custody of him to Wife. In March 1983 the parties' second child was born. In June 1983 Husband moved from Pennsylvania to 'Delaware, and in September 1983 Wife moved from Pennsylvania to Delaware with the two children. In February 1984 Husband moved to Elkton, Maryland.

In September 1984 Wife left the two children with plaintiff. There is a dispute concerning the circumstances surrounding her having done so. Wife alleges that she decided to leave the children with Husband temporarily while she and her fiance looked for a house in New York. Husband alleges that Wife admitted that she was not emotionally equipped to raise two children and left them with him while she moved to New York with her boyfriend. In any event on October 4, 1984 Husband filed a Bill of Complaint for custody in the Maryland court and received temporary custody pending a hearing on the merits.

Meanwhile, on October 3, 1984 the Pennsylvania court entered an order modifying the previous custody order of February 4, 1984 to include the second child who had been born in March 1983. (This order was entered upon a stipulation which Husband had signed in November or December

---

1. PKPA confers no power upon this Court to enjoin other proceedings. However, this Court has inherent equitable power to enjoin parties over whom it has proper jurisdiction from participating in parallel proceedings in other

courts. *See, e.g., Del Mar Avionics v. Quinton Instruments Company*, 645 F.2d 832, 836 (9th Cir.1981); *Small v. Wageman*, 291 F.2d 734, 736 (1st Cir.1961).

1983). On October 17, 1984 the Pennsylvania court entered an order granting the parties a divorce. At the time this order was entered the parties had not been living in Pennsylvania for more than one year. For that reason the Pennsylvania court subsequently (in January 1985) entered an order rescinding the custody decree.

On October 22, 1984 a hearing was held in the Maryland court. Although the parties are again in dispute as to precisely what happened, it is clear that Wife entered into evidence the stipulation and order from the Pennsylvania court. As the Maryland court's docket sheet reflects, the court, finding that no emergency situation existed, ordered that the Pennsylvania court's custody order was to be given full faith and credit and was to remain in effect pending a final hearing. The court returned custody of the children to Wife who took them to New York where she was living.

After the October 22nd hearing, Husband contacted the Pennsylvania court and learned that the stipulation had only recently been submitted to that court and that Wife had moved for and was granted a divorce by the Pennsylvania court on October 17th. On November 16, 1984 Husband filed a motion for reconsideration in the Maryland court. After a hearing held on November 28th, that motion was granted and the court asserted that it had jurisdiction over the custody proceeding.

On November 1, 1984—after the initial hearing in Maryland but before the motion for reconsideration was filed, Wife filed a petition in the New York court. Echoing allegations which she had previously made in Pennsylvania, Wife averred in New York that husband threatened her and that he was a heavy cocaine user. The Court issued a temporary order of protection, granted Wife temporary custody and suspended Husband's visitation rights (under the Pennsylvania order). On November 30, 1984, Wife married her present husband (by whom she had a child on October 21, 1985). On December 28, 1984, Husband went to New York and filed a petition for custody and/or visitation in the New York court. He alleges that he filed this petition because he was advised that this was the only way which he could enforce a Maryland order giving him visitation rights during the Christmas holidays.

On January 11, 1985 a hearing was held in New York on Wife's temporary order for protection. The court continued the order and granted the Husband supervised visitation. On May 2, 1985 Wife filed a motion to dismiss the Maryland proceeding on the ground that the Maryland court lacked jurisdiction. An evidentiary hearing was held on this motion on June 5th and one week later the motion was denied. On May 30, 1985 Wife filed a petition for custody in the New York court and on June 28th the court granted Wife temporary custody. On November 5, 1985 a hearing on the merits was held in the Maryland court. Wife (who had had a baby two weeks before) did not attend the hearing. Her counsel was present but he requested leave to withdraw his appearance and moved for a continuance. His request and motion were denied, and the hearing proceeded. At its conclusion the Court awarded custody of the children to Husband with visitation by Wife to be determined later.

On November 13, 1985 the New York court ruled that it had jurisdiction of Wife's petition for custody. On December 13, 1985 the New York court denied Husband's motion to dismiss its temporary order of custody and to enforce the Maryland order. The court issued an opinion in which it ruled that the Maryland court was without jurisdiction. On January 31, 1986 the Maryland court issued an amended order of custody appointing Thomas Alexander (the executive director of Male Parents for Equal Rights) as the children's guardian. On February 13, 1986 the New York judge allegedly told Alexander that the New York court would not enforce the Maryland custody order. On May 1, 1986 the Maryland court found Wife in contempt and ordered her arrest pending a hearing on the merits.

### III.

These facts have been stated at some length in order to provide a complete picture of the background against which the parties' contentions and counter-contentions are made. However, the facts pertinent to the determination which this Court is required to make under Section 1738A are limited to those pre-dating and immediately surrounding the October 22, 1984 hearing in the Maryland court. If that court then had jurisdiction, what happened thereafter is irrelevant because under Section 1738A(g) New York could not exercise jurisdiction in any custody proceeding.

■ The Maryland Court did have jurisdiction on October 22, 1984. In order for a court's custody order to be valid under the PKPA the court must meet the jurisdictional requirements under the law of its own state and, as well, satisfy one of five federally imposed jurisdictional conditions. 28 U.S.C. Section 1738A(c). Here, these two inquiries dovetail since Maryland law imposes essentially the same conditions as does federal law.

The basis for the Maryland court's jurisdiction was provided by Maryland Code Ann., Family Law Art. Section 9-204(a)(4) and 28 U.S.C. Section 1738A(c)(2)(D)(ii). In accordance with those sections, the Maryland court found—and there was sufficient evidence to support its findings—that at the time of the commencement of the Maryland proceeding there was (1) no other state which was the children's "home state," i.e. a state where they had been living with one of their parents for at least six consecutive months, (2) no other state which had been the children's home within six months, from which they had been removed and in which one of their parents continued to live, (3) no other state with which the children and one of their parents had significant connections, (4) no other state in which the children were physically present after having been abandoned or placed in an emergency situation and (5) no other state which had previously made a valid child custody determination. As found by the Maryland court, at the time of

the commencement of the Maryland proceedings the children and Wife had not been living in Pennsylvania for more than a year, they were no longer living in Delaware which had been their home in the preceding six months and they had not yet moved to New York. Furthermore, while Wife had procured a Pennsylvania decree immediately prior to the Maryland hearing, that decree had not been entered consistently with Section 1738A because the Pennsylvania court was then without jurisdiction at least under federal law and probably under Pennsylvania law as well.

■ A technical argument could perhaps be made that the Maryland court's jurisdiction was defective because the court did not make the determination—which it was required to do both under Section 9-204 and Section 1738A(c)(2)(D)—that it was in the best interest of the children for it to assume jurisdiction. However, the reason that the court did not reach that question at the October 22, 1984 hearing was that Wife wrongfully suggested that the Pennsylvania court had entered a valid custody order while simultaneously failing to advise the court that the Pennsylvania court had entered a divorce decree five days earlier (which would have had the effect of ending its jurisdiction). Wife is judicially estopped from now contending that the Maryland court did not make a finding which her own actions foreclosed it from making. Furthermore, by virtue of its November 28, 1984 order granting Husband's motion for reconsideration and assuming jurisdiction and by its subsequent order denying Wife's motion to dismiss for lack of jurisdiction, the Maryland court at least implicitly made the "best interest of the children" determination.

### IV.

■ At the hearing held on September 8, 1986, this Court raised the question as to whether, assuming that it had jurisdiction and that the complaint stated a claim upon which relief can be granted, the Court should decline to exercise its jurisdiction under the Declaratory Judgment Act, at

least until Husband had fully exhausted his rights to appeal in New York. *See Flood v. Braaten, supra* at 312 n. 28. Upon reflection the court has concluded that if, as the Fourth Circuit has held, the PKPA does give rise to an action maintainable in federal court, this case is an appropriate one for the granting of declaratory relief.

First, Wife has flaunted federal law. The facts demonstrate that (1) the Maryland court properly had jurisdiction, (2) it ceded that jurisdiction because of erroneous information wrongfully provided by Wife, (3) it would have retained jurisdiction but for Wife's wrongful conduct and (4) Wife attempted to circumvent the dictates of the PKPA by commencing custody proceedings in New York immediately after the initial hearing in Maryland and before Husband had been able to uncover the true facts regarding the Pennsylvania proceeding.

Second, while the Court is concerned (as indicated at the hearing) that it necessarily is focusing upon narrow questions of jurisdiction, *see Flood v. Braaten, supra* at 306–310, and not upon the essential question of the best interest of the children, there is no reason to believe that the Maryland court will not be guided solely by that interest in ultimately resolving the custody issue. Kathy Bollatti has acted entirely improperly during the course of the Maryland proceeding. However, in the final analysis her improper conduct is not at all determinative of the custody question but only relevant as evidence of a possible lack of good character. The Maryland court is as fully cognizant as is this court of that fact. Likewise, the Maryland court is fully aware that substantial time has now passed while the children have been living with Ms. Bollatti and her new husband, and that the custody hearing held in November 1985, while formally adversarial, necessarily was flawed by Mrs. Bollatti's absence and her lack of cooperation with counsel. The Maryland court may well take these facts into account in deciding whether (1) a new hearing on the merits should be held, (2) the citation of Mrs. Bollatti for contempt and the warrant for her arrest should be withdrawn to permit her to come to Maryland to participate in the hearing and (3) a temporary order which modifies the custody order to maintain the status quo should be issued until a new hearing on the merits has been concluded.

A separate order is being entered herewith declaring that the Maryland court rather than the New York court has jurisdiction in this matter and enjoining defendant from participating in any custody proceedings in any court other than Maryland.

## ORDER

For the reasons stated in the memorandum entered herein, it is, this 17th day of October 1986

ORDERED

1. That it is declared that under the provisions of 28 U.S.C. Section 1738A the Circuit Court for Cecil County, Maryland has jurisdiction to determine and modify the determination of the custody of David W. Ferguson, Jr. and Lydie Ann Ferguson and that the Family Court of the State of New York, County of Rockland, does not have such jurisdiction; and

2. Kathy J. Bollatti is permanently enjoined from participating in any custody proceeding relating to David W. Ferguson, Jr. or Lydie Ann Ferguson other than in the Circuit Court for Cecil County, Maryland.